IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| BRYAN JAMES, Individually § | |
| and d/b/a JJ Enterprises License § | |
| § | |
| V. § | CIVIL ACTION NO. G-11-457 |
| § | |
| HOUSTON A.T.F., ET AL. § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court with the consent of the Parties pursuant to 28 U.S.C. §636(b)(1)(c). On October 4, 2011, pursuant to 18 U.S.C. §923(f)(3), Bryan James commenced this review of the administrative decision to revoke his federal firearms license by filing an "Original Complaint." On February 7, 2012, this Court conducted an Evidentiary Hearing. Having now considered the entire record, the evidence presented and the applicable law and regulations the Court issues its Findings of Fact and Conclusions of Law.

1. On August 1, 2009, Bryan James, intending to become a firearm's dealer and to do business as J&J Enterprises (James), submitted an application for a federal firearms license to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

2. On September 2, 2009, James met with Jennifer Hartman, an Industries Operations Investigator (IOI) with the ATF. During the meeting, Hartman helped James correct his original application.

3. On November 2, 2009, James met with Hartman again, this time for two to three hours. During this meeting James re-signed his corrected application and Hartman explained the federal firearms regulations applicable to James' intended business, including, but not

limited to, the specific regulations dealing with "CONDUCT OF BUSINESS" and "REQUIRED RECORDS." According to Hartman, she went over each applicable regulation in the "Acknowledgment of Federal Regulations" form "line by line" and answered all of James' questions pertaining thereto. Hartman concluded that James seemed to understand each regulation's requirements. Hartman, therefore, had James execute the Acknowledgment form. In signing the form James also acknowledged that "I understand that this (explanation) is only a general overview of the regulations and that I will be responsible for familiarizing myself with all the laws and regulations governing my licensed firearm business."

4. On December 17, 2009, Federal Firearms Licence No. 5-76-039-01-3A-02469 was issued to " Bryan James d/b/a JJ Enterprises."

5. Following an unspecified delay caused by the need to resolve an apparent zoning restriction, James opened J&J Enterprises and began conducting business.

6. As part of James' business he was required by regulation to create and maintain an accurate, up-to-date record of the acquisitions and dispositions of any and all firearms in what is commonly called a "bound book" (A&D Records). The critally important purpose of accurate and timely A&D Records is to allow ATF and other law enforcement personnel to track the movement of firearms through commerce in an effort to keep firearms from the possession of those individuals who are not legally entitled to possess them because of age, criminal background or incompetency. See Huddleston v. United States, 415 U.S. 814, 824-25 (1974)

7. While it can be appropriate to maintain A&D records in an electronic system, a licensee must also have "backup" records independent of his computer records to avoid a loss of the required information due to computer malfunctions.

8. If a firearms dealer "willfully" fails to comply with the A&D records requirements his license may be revoked. "Willfulness" may be proven by evidence that the licensee knew of his legal obligations and either purposefully disregarded those obligations or failed to comply with them through plain indifference; the Government is not required to show any bad purpose or evil motive on the part of the licensee. Willingham Sports, Inc. v. ATF, 415, F.3d 1274, 1276 (11th Cir. 2005)

9. On September 15, 2010, Felicia Faggard, an IOI with ATF met with James for an inspection of his business pursuant to 18 U.S.C. §923(g)(1)(B). During this meeting Faggard asked to see James' A&D Records and discovered that James had no bound book at all. After James stated that he did not know how to maintain one, Faggard explained the applicable regulations again and created an A&D records system for James' future use.

10. On September 16, 2010, Faggard continued her inspection and found that James had 25 firearms in the possession of his business that were not logged into its inventory and that he had transferred 5 firearms without completing the paperwork required by the applicable federal firearms regulations.

11. Following the completion of her inspection, Faggard completed a "Report of Violations" for not creating and maintaining an A&D book; for failing to timely record the acquisition of 30 firearms; and for failing to timely record the disposition of 5 of those firearms.

12. On September 23, 2010, Faggard delivered a copy of the "Report of Violations" to James who signed the original to acknowledge his receipt of the copy.

13. On March 1, 2011, ATF issued a "Notice of Revocation of License" based upon the violations found during Faggard's inspection. A Hearing was requested by James and was held on June 21, 2011, however, James failed to appear. On August 10, 2011, the acting Director of Industry Operations in ATF's Houston Field Division revoked James' license. This review followed.

14. The Government's evidence has established that James failed to create and maintain an A&D record book for his business from at least December 17, 2009, through September 16, 2010, in violation of 18 U.S.C. §§922(b)(5) and (m) and Title 27 C.F.R. §478.121(c).

15. The Government's evidence has established that on 30 occasions between December 17, 2009, and September 16, 2010, James failed to record the acquisition of a firearm in an A&D bound book in violation of 18 U.S.C. §§922(m) and 923(e) and Title 27 C.F.R. §478.125(e).

16. The Government's evidence has established that on at least 4 occasions between December 17, 2009, and September 16, 2010, James failed to timely enter the disposition of firearms in an A&D bound book in violation of 18 U.S.C. §§922(m) and 923(3) and Title 27 C.F.R. §478.125(e).

17. James may have created an electronic A&D records program, however, if he did, he failed to maintain an independent A&D bound book or other recording system to back up and/or verify his acquisitions and dispositions. As such, his alleged "computer crash" constitutes no defense to these violations.

18.     James' numerous violations of the Gun Control Act and the applicable federal regulations over a nine month period after having been instructed by ATF officials in acquisition and disposition record requirements and acknowledging his duty to familiarize himself with those requirements demonstrates a complete lack of commitment to comply with legally required firearms business practices and constitutes, at the very least, "plain indifference" which satisfies the standard the Government must meet to prove the willfulness of James' violations and support the revocation of James' license.  See Strong v. United States, 422 F.Supp. 2d 712, 721-24 (N.D. Tex. 2006)

## CONCLUSION

After *de novo* review, the Court concludes that the administrative decision issued on August 10, 2011, revoking the Federal Firearms License No. 5-76-039-01-3A-02469 held by Bryan James d/b/a JJ Enterprises, is **AFFIRMED**.

**DONE** at Galveston, Texas, this _____23rd_____ day of May, 2012.

_____
John R. Froeschner
United States Magistrate Judge